UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEE HOLT, | Case No. CIV. F-97-6210-AWI-P |
| Petitioner, | <u>DEATH</u> <u>PENALTY</u> <u>CASE</u> |
| vs. | ORDER FOLLOWING CASE MANAGEMENT CONFERENCE |
| Jill L. Brown, As Warden of San Quentin State Prison, | DATE:   May 16, 2005 |
| | TIME:   3:00 p.m. |
| Respondent. | COURTROOM THREE |

This matter came on for a second Case Management Conference (hereafter "CMC") on May 16, 2005 at 3:00 p.m. in Courtroom 3 of the above-entitled Court, the Honorable Anthony W. Ishii, presiding. Petitioner John Lee Holt ("Holt") appeared by and through his counsel of record, Robert M. Myers, of Newman, Aaronson & Vanaman, and Assistant Federal Defender Jennifer M. Corey.  Respondent Jill L. Brown, as Warden of San Quentin State Prison (the "Warden") appeared by and though her counsel of record, Deputy Attorney General Erik Brunkal.  Also present on behalf of the Warden were Deputy Attorneys General Patrick J. Whalen and Eric L. Christoffersen.  All counsel entered their appearances telephonically.

The second CMC was scheduled to discuss case management issues pertaining to the anticipated limited evidentiary hearing ordered on March 30, 2004.  A five month delay in the preparation for the

evidentiary hearing was occasioned by temporary abeyance of federal proceedings for litigation of a related claim in state court. Holt since has requested that federal proceedings be reinstituted, and the Court, finding no impediment under principles of federalism or comity, granted the request.

To facilitate discussion of case management issues, the parties timely filed a Joint Case Management Statement on May 2, 2005. In addition, Holt filed a proposed case management plan and budget for this phase of the litigation under seal. The second CMC proceeded with discussions involving the Court and counsel for both parties. At the culmination of the joint discussion concerning the case, counsel for the Warden were excused so the Court could discuss confidential budgeting matters with counsel for Holt. The Court finds that Holt has made a proper showing of the need for confidentiality pursuant to 21 U.S.C. § 848(q)(9). A separate order, filed under seal concurrently herewith discloses the results of the confidential budget conference.

The Joint Case Management Statement lists witnesses from whom the parties wish to elicit evidence, proposes a discovery plan, and describes the manner in which evidence will be presented at the evidentiary hearing. The number of witnesses proposed, 219 by Holt and 15 by the Warden, far exceeds the Court's expectations for the scope of a limited evidentiary hearing. Moreover, the Court is concerned that the manner in which the parties propose to present evidence is more cumbersome than if witnesses simply were to testify at a court hearing. The parties informed the Court that a large number of witnesses on Holt's proposed witness list are employees of the California Department of Corrections (the "CDC") who have had

1  contact with or have been involved in treatment of Holt at both San
2  Quentin State Prison and Vacaville State Prison.
3       Counsel for Holt suggested that according to procedure agreed
4  upon by the parties in the Joint Case Management Statement, the list
5  of witnesses and factual issues in dispute can be greatly reduced in
6  the ensuing weeks by exchanging information between counsel and by
7  meeting and conferring.  The parties propose that within 120 days from
8  the Court's order approving a case management plan, a second Joint
9  Case Management Statement will be filed which will identify factual
10 issues the parties do not dispute, exhibits the parties agree can be
11 admitted into evidence, and witnesses from whom the parties wish to
12 elicit evidence on the limited issues.  The Court approves this plan.
13      The implementation of this plan will involve Holt's litigation
14 team drafting a detailed proposed stipulation with supporting
15 documentation, which will then be provided to counsel for the Warden.
16 Once the Warden's litigation team has an opportunity to review the
17 materials, appropriate modifications can be discussed and
18 incorporated.  The parties anticipate that the process for preparing
19 the second Joint Case Management Statement will require several weeks
20 before the final document, the second Joint Case Management Statement,
21 is filed.
22      The Court has three concerns regarding the scope of the
23 evidentiary hearing that shall inform the parties' preparation of the
24 second Joint Case Management Statement and the evidentiary hearing in
25 general. First, since an unspecified number of proposed witnesses are
26 CDC employees, it is clear that Holt anticipates introducing
27 significant post-incarceration testimony and documentation.  At this
28 point in the proceedings, however, the Court does not understand the

relevance of post-incarceration testimony. The guilt phase issues before the Court involve questions about the impartiality of Juror Billy Ross, Holt's mental competence at the time of the trial, Holt's mental state at the time of the crime, and physical evidence concerning whether Holt committed a completed rape. Whereas the Court perceives that post-incarceration evidence of Holt's mental state and health conceivably would be relevant as rebuttal evidence were the Warden to argue that Holt was malingering in his behavior at the time of the trial, the Court is not aware that a malingering allegation has been advanced. With respect to post-incarceration evidence in particular, but generally as well, the parties are expected to make an offer of proof for evidence intended to be introduced at the evidentiary hearing. Should either party wish to file any interim submissions between now and the filing of the second Joint Case Management Statement, those submissions will be considered by the Court.

The second concern the Court harbors about the scope of the evidentiary hearing is the potential for presentation of cumulative evidence. The Court reminded the parties at the CMC that a substantial body of testimonial and documentary evidence already has been reviewed. Accordingly, the Court is not interested in receiving evidence that duplicates what already has been reviewed in terms of expert testimony, even though there have been advances in mental health care and neurological testing since the evidence was originally submitted. Nor can substantial funding be authorized to redraft augmented or updated declarations. Rather, the Court is interested in the parties' joint efforts to agree on admitting evidence that already is in the record. Similarly, the Court is not interested in

reviewing multiple family member declarations which recount repetitive details of abuse inflicted on Holt and his siblings, or the wide variety of mental illnesses that family members suffer. This information should be confirmed by the parties in advance of an evidentiary hearing so that the foundation for expert opinion can be established.

The third concern focuses on the Warden's proposed witness list, in two particulars. First, the Warden has designated Wyatt and Ramona Ross as well as Juror Billy Ross presumably to testify about the question of Juror Ross's impartiality at Holt's trial. The order granting an evidentiary hearing, however, limited evidentiary development for this claim to the *fact* and the *reasons* Mr. Ross delayed in providing the trial court a full explanation of his dealings with his African-American tenant Mary Callahan, including possible racial animus, concern for his son Wyatt's assault prosecution, and short term memory loss. The Court anticipated that this evidence would be elicited from Mr. Ross, himself, not from his son, Wyatt Ross, or his wife, Ramona Ross. The parties should be mindful of the limitations imposed in the order granting a limited evidentiary hearing. If there is justification for presentation of evidence the order did not contemplate, that justification must be presented to the Court. The second concern arising from the Warden's witness list concerns evidence to be developed about whether Holt committed a completed rape. The Warden has designated both an expert in sexual assault victims, Dr. William Green, and an unidentified gynecological expert. Justification for both of these expert witnesses will need to be expressed in the next Joint Case Management Statement.

An additional factor that will have an impact on evidentiary hearing preparation also was discussed, and that is the impending departure of Deputy Attorney General Erik Brunkal from the Office of the Attorney General.  Mr. Brunkal reported to the Court, however, that replacement counsel for the case will be assigned within the next week.  While Holt's litigation team prepares the materials to be turned over to the Warden's counsel for review, the newly assigned deputy attorney general will have an opportunity to read relevant portions of the file before evaluating the materials provided by Holt's counsel.  Thus, no delay is anticipated on account of Mr. Brunkal's departure.

In light of the foregoing, the parties are directed to meet and confer to narrow the scope of the factual disputes in this case, and to file a second Joint Case Management Statement by September 19, 2005.  Thereafter, on September 26, 2005 at 3:00 p.m., the Court will conduct a third telephonic CMC, with counsel for Holt responsible for arranging and initiating the call.  If the parties believe an interim telephonic conference would facilitate any difficulties encountered, the Court will be available on reasonable notice.

IT IS SO ORDERED.

Date: May 23, 2005                              /s/ Anthony W. Ishii
                                           United States District Judge