UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEE HOLT, | Case No. CIV. F-97-6210-AWI-P |
| Petitioner, | <u>DEATH</u> <u>PENALTY</u> <u>CASE</u> |
| vs. | ORDER FOLLOWING CASE MANAGEMENT CONFERENCE |
| Steven W. Ornoski, As Action Warden of San Quentin State Prison, | DATE: September 26, 2005<br>TIME: 3:30 p.m.<br>COURTROOM THREE |
| Respondent. | |

This matter came on for a third Case Management Conference (hereafter "CMC") on September 26, 2005 at 3:30 p.m. in Courtroom 3 of the above-entitled Court, the Honorable Anthony W. Ishii, presiding. Petitioner John Lee Holt ("Holt") appeared by and through his counsel of record, Robert M. Myers, of Newman, Aaronson & Vanaman, and Assistant Federal Defender Jennifer M. Corey. Respondent Steve W. Ornoski, as Acting Warden of San Quentin State Prison (the "Warden") appeared by and through his counsel of record, Deputy Attorney General Sean M. McCoy. All counsel entered their appearances telephonically.

The CMC was scheduled to discuss the parties' progress in preparing for the anticipated limited evidentiary hearing ordered March 30, 2004. In particular, the CMC was convened to assess the

---

\* Steven W. Ornoski is substituted for his predecessors Hill L. Brown and J.D. Stokes, as Acting Warden of San Quentin State Prison pursuant to Federal Rule of Civil Procedure 25(d).

97dp6210.OFollCaseMgmtConf.Holt.wpd

efficacy of efforts to narrow the scope of factual disputes as well as the parties' joint efforts to agree to admit evidence already part of the record.

The parties timely filed a Joint Case Management Statement on September 19, 2005 ("Joint Statement"). As is evident from the Joint Statement two factors have impeded the process of the evidentiary hearing preparation. First, Mr. McCoy was only recently assigned to the case, making his first appearance on June 1, 2005. Second, the parties have become embroiled in a dispute over the scope of a proposed protective order regarding turning over case files generated by Holt's trial attorneys and trial investigators. In spite of these impediments the parties nonetheless set out their respective positions about conducting discovery and submitting direct testimony by written declaration and deposition transcript. Unfortunately, due to Mr. McCoy's recent appointment to the case, and Mr. Myers' desire to hasten the pace of conducting the anticipated evidentiary hearing, the parties have not been able to agree on a schedule. The Joint Statement does not address the more fundamental question of how the parties intend to narrow the scope of evidence presented to the Court.

While the Court is concerned with delays in bringing this matter to an evidentiary hearing, it also recognizes that Mr. McCoy only recently has been given the appreciable task of becoming familiar with this case. Accordingly, the Court declines to set a discovery and briefing schedule at this time, but rather continues the present CMC to December 19, 2005 at 3:00 p.m. to give Mr. McCoy the time necessary to realistically evaluate the case. Five court-days before the hearing, the parties are directed to file a supplemental Joint Case

Management Statement in which the Court's concerns about scope and breadth of the evidentiary hearing will be addressed.

The parties are reminded that the March 30, 2004 order granting a limited evidentiary hearing was predicated on substantial evidence presented by Holt that he lacked the necessary mental faculties to have committed capital murder or to be tried. A subsidiary issue involves the mental state of one of Holt's jurors, Mr. Billy Ross, which again was brought to the Court's attention based on substantial testimonial and documentary evidence. These factors shall inform the parties' responses to the following concerns.

1. Since an unspecified number of the 219 witnesses Holt has designated in his witness list are employees of the California Department of Corrections, it seems clear he anticipates introducing significant post-incarceration testimony and documents. The Court would like an explanation of the relevance of such testimony to the guilt phase issues of the impartiality of Juror Billy Ross, Holt's mental competence at the time of trial, his mental state at the time of the crime, and/or physical evidence concerning whether he committed a completed rape. One relevant subject matter for post-incarceration evidence is rebuttal to a potential claim of malingering. But, no malingering allegation has been made. The parties are directed to inform the Court whether the Warden intends to advance this principle. The parties are further directed to advise the Court as to whether there is some other purpose for this post-incarceration evidence. Also, the Court would like to be informed of the progress of interviewing prison employees and whether the Warden is cooperating in this endeavor.

2. Holt should not be developing cumulative or repetitive evidence. As the parties have been reminded, a substantial body of testimonial and documentary evidence already has been reviewed by the Court. The Court is not interested in receiving evidence that duplicates expert testimony already reviewed, even though there have been advances in mental health care and neurological testing since the evidence originally was submitted. Funding cannot and will not be authorized simply to redraft augmented or updated declarations. Rather, the Court is interested in the parties' joint efforts to agree on admitting evidence that already is in the record, particularly declarations of Holt's experts and foundational documentary evidence. While the Court does not anticipate that the Warden will stipulate to the opinions and conclusions in those declarations and documents, he and his litigation team most certainly can stipulate to the admissibility of the documents. The Court would like to know what efforts have been undertaken to accomplish this.

3. As with expert testimony, the Court is not interested in reviewing multiple family member declarations which recount repetitive details of abuse inflicted on Holt and his siblings, or the wide variety of mental illnesses that family members suffer. This information should be confirmed by the parties. If the Warden does not agree to this background information, then Holt will have to develop it and the Warden will have to rebut it. If development of such lay foundational evidence isn't necessary because the parties can enter into an appropriately limited stipulation, the Court will provide

|     |     |
| --- | --- |
| 1   | whatever assistance and resources it can to assist with this |
| 2   | process. |

4. The Warden's proposed witness list includes the wife and son of Juror Billy Ross as witnesses. The order granting an evidentiary hearing, however, specifically limited evidentiary development for this claim to the *fact* and the *reasons* Mr. Ross delayed in providing the trial court a full explanation of his dealings with his African-American tenant Mary Callahan, including possible racial animus, concern for his son Wyatt's assault prosecution, and short term memory loss. The Court anticipated that this evidence would be elicited from Mr. Ross, himself, not from his son, Wyatt Ross, or his wife, Ramona Ross. The Court would like a response from the Warden on this issue.

5. The Warden's proposed witness list also designates both an expert in sexual assault victims and a gynecological expert. The Court does not perceive justification for an expert on sexual assault victims; the only issue regarding the pertinent claim is whether confidence in the jury's verdict that Holt committed a completed rape is undermined in light of additional evidence developed. The Court would like a response from the Warden on this issue as well.

With respect to the current conflict over the scope of a protective order, the Court has two comments which should inform the parties' conduct on this particular issue. First, there is no actual controversy respecting the protective order for the Court to decide. The Warden has not moved for discovery and Holt has not moved for a protective order. Until there an actual motion pending by which the parties are requesting specific relief, the Court cannot and will not

1  rule.  Second, waiver of the attorney-client privilege, the subject
2  matter of the disputed protective order, has little to do with the
3  Court's concerns listed above.  The Court questions whether disclosure
4  to the Warden of trial counsel's files is so crucial to resolution of
5  the case that it justifies the delay of having to litigate the scope
6  of a protective order.
7       In light of the procedural status of this case, all documents and
8  pleadings on file, the Court orders the CMC conducted on September 26,
9  2005 continued to December 19, 2005 at 3:00 p.m., to be conducted
10 telephonically with counsel for Holt responsible for arranging and
11 initiating the call.  Five-court days prior to that CMC, December 12,
12 2005, the parties shall file a supplemental Joint Case Management
13 Statement responsive to this order and which shall inform the Court
14 of progress being made.  If the parties believe an interim telephonic
15 conference would facilitate any difficulties encountered, the Court
16 will be available on reasonable notice.
17
18 IT IS SO ORDERED.
19 **Dated:    September 30, 2005**            **/s/ Anthony W. Ishii**
   c508d4                                     UNITED STATES DISTRICT JUDGE