UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEE HOLT,<br><br>　　　　Petitioner,<br><br>　vs.<br><br>Steven W. Ornoski, As Acting Warden of San Quentin State Prison,<br><br>　　　　Respondent. | Case No. CV F-97-6210-AWI<br><br>DEATH PENALTY CASE<br><br>ORDER ESTABLISHING PRE-EVIDENTIARY HEARING CASE MANAGEMENT PLAN |

On December 19, 2005, this Court ordered off calendar a previously scheduled case management conference ("CMC"). The CMC was taken off calendar because the joint statement filed by the parties in advance of the CMC did not adequately address concerns the Court has about narrowing the factual issues to be decided at the anticipated evidentiary hearing in this matter. To remedy this situation, the Court directed Respondent Steven W. Ornoski, As Acting Warden of San Quentin State Prison (the "Warden") to file a response to four specific questions. The Warden filed a timely response on January 24, 2006. The Court has reviewed the Warden's response together with previous joint case management statements filed by the Warden and Petitioner John Lee Holt ("Holt"), for the purpose of establishing a pre-evidentiary hearing case management plan.

**I.   Background.**

On March 30, 2004, the Court issued an order granting a limited evidentiary hearing as to seven guilt phase claims.  The March 30, 2004 Order followed the Court's review of substantial evidence Holt previously submitted with state post-conviction proceedings.  That evidence is probative of the assertion that Holt lacked the necessary mental faculties to have committed capital murder or to be tried. Additional evidence calls into question the factual basis for Holt's conviction of a completed rape and the jury's finding of the rape-murder special circumstance.  A subsidiary issue involves the mental state of one of Holt's jurors, Billy Ross.

The Court conducted two prior CMCs on May 16, 2005 and September 26, 2005 for the purpose of working with the parties to narrow the factual disputes as to each of these issues.  Prior to the scheduled December 19, 2005 CMC, the parties filed a joint case management statement which failed to address the Court's primary concerns, particularly from the Warden's perspective.

In the form of questions, those concerns were:

1. With respect to Holt's allegations of mental incompetence to be tried and a mental state defense to the underlying offense, does the Warden claim Holt is malingering?

2. In the March 30, 2004 order granting a limited evidentiary hearing, the Court referred to numerous declarations and documentary evidence originally submitted by Holt to the California Supreme Court on state post-conviction proceedings.  Does the Warden object to the admissibility of any of this evidence?

|   |   |   |
|---|---|---|
| | | If so, and bearing in mind the provisions if 28 U.S.C. § 2246, the Warden is directed to specify the document(s) and/or declaration(s) to which he objects, and state the legal basis for his objection(s). |
| | 3. | Given the Court's order limiting evidence that will be received regarding the claim of juror partiality as to Billy Ross, why does the Warden intend to elicit testimony from Wyatt Ross or Ramona Ross? |
| | 4. | Given the Court's order regarding physical evidence of a completed rape, why does the Warden intend to call an expert on sexual assault victims in addition to a gynecologist? |

**II.  The Warden's Response.**

The Warden contests all but a very small fraction of the evidence in the record.  He claims that Holt, indeed, is malingering and he objects to all evidence previously submitted by Holt on state post-conviction proceedings as inadmissible.  Further, he contends he is entitled to produce evidence regarding juror Billy Ross and Holt's rape conviction which is beyond the scope of inquiry originally contemplated by the Court.

    **A.  Whether Holt is Malingering.**

The Warden takes the position that evidence of Holt's compromised mental state regarding to his competence to be tried and his mental state at the time of the offense is undermined by evidence of malingering.  Evidence supporting the Warden's contention that Holt is a malingerer is contained in the Reporter's Transcript of the state trial and in some exhibits Holt appended to his state habeas petition.

The Warden states that he anticipates developing additional evidence through discovery.

### B. Objections to And Proposals to Meet Previously Submitted Evidence.

The Warden reports that to controvert evidence previously submitted by Holt, he needs to develop his own evidence. In that vein, he states that the March 30, 2004 Order granting a limited evidentiary hearing and the status conference statements contemplate some degree of discovery, "notably the files of petitioner's trial counsel." The Court is aware the parties have engaged in some discussions for discovery of files generated by Holt's trial counsel and that these discussions have not proved fruitful. The Warden also states that he "has not been permitted to pose interrogatories to the various declarants, affiants, and experts" presented by Holt. None of the prior joint case management statements outline whether the Warden has attempted to propound interrogatories on an informal basis.

Until discovery issues are resolved, the Warden stand by numerous general and specific objections to the previously submitted and considered evidence. He "objects generally to admission of any and all exhibits cited by the Court as part of [Holt's] state habeas petition." There are over 170 declarations, reports and other documents involved. The bases for the general objections to Holt's declarations include that they lack foundation, that they contain hearsay, that the declarants are not competent, and that the probative value of the declarations is outweighed by prejudice to the Warden. Holt's submitted documents and reports are generally objected to on the grounds that they lack authenticity, that they contain hearsay, that they lack competence of the declarant, and that the probative

value of the documents/ reports is outweighed by prejudice to the Warden.

The Warden also interposes specific objections as to each of over 120 declarations, reports, or other documents. He claims not to object to approximately 47 declarations, reports or other documents, but relates that even when he does not specifically object to a particular exhibit, he does not waive his general objections. From this statement, the Court understands that the Warden objects to each and every offer of evidence previously submitted with Holt's state post-conviction proceedings.

**C.   Evidence Pertinent to Alleged Juror Misconduct.**

The Warden has listed Ramona Ross and Wyatt Ross as proposed witnesses in connection with the claim alleging misconduct by juror Billy Ross. Ramona Ross is Billy Ross's wife, and Wyatt Ross is his son. The Court directed the Warden to explain the purpose of testimony from Mr. Ross's wife and son, in light of the limited nature of the evidentiary hearing ordered on this claim. The Warden responds that the testimony of Mr. Ross's wife and son will be highly probative rebuttal evidence concerning "the incident involving Mary Callahan" and probative on the "the issue of the existence or non-existence of racial animus and bias on the part of Billy Ross."

**D.   Evidence Pertinent to the Disputed Rape Conviction.**

The Warden has listed an expert on sexual assault victims in addition to a gynecologist regarding the claim disputing physical evidence of a completed rape. The Court directed the Warden to explain the purpose of proposed testimony from an expert on sexual assault victims. He responds that an expert on sexual assault victims "can provide material direct or rebuttal evidence regarding the

significance of any physical trauma or its lack, and can offer expert testimony on likely causes in light of the totality of evidence that was available to counsel and that was presented at trial."

**III. Discussion.**

With the foregoing information supplied by the Warden, in conjunction with previously submitted joint case management statements, the Court establishes a pre-evidentiary hearing case management schedule over the next four months. At the end of that four-month period, the Court will conduct a subsequent CMC to assess the parties' progress in preparing for the anticipated evidentiary hearing, including conducting discovery and stipulating to undisputed facts. The Court also intends to set a date for the evidentiary hearing at that CMC.

    **A.   Holt's Mental State.**

In a previous joint case management statement filed May 2, 2005, Holt identified 219 witnesses whose testimony he stated he intended to present, an undisclosed but significant number of whom are employees of the California Department of Corrections and Rehabilitation ("CDCR") who have had contact with or have been involved in treatment of Holt at both the San Quentin and Vacaville prison facilities. The Warden's contention that Holt is a malingerer supplies relevance to post-incarceration evidence from CDCR employees, which the Court previously questioned. Aside from refuting the Warden's claim of malingering, Holt asserts the post-incarceration evidence is independently relevant to "professional judgments concerning his past mental status" as it completes his mental health history.

Since the relevance of post-incarceration evidence has been supplied, the Court directs the parties to document progress they are making in interviewing CDCR employees, including the Warden's cooperation in this endeavor. To the extent that testimonial evidence from CDCR employees will be cumulative (if it will be cumulative), the Court also anticipates the parties will reach a stipulation about post-incarceration findings and treatments. That stipulation will be filed with the Court as specified below, within 120 days of the filing of this Order in a joint case management statement. With respect to discovery the Warden intends to conduct in order to fortify his contention of malingering, his discovery motions shall be filed as specified below, within 60 days of the filing of this Order.

**B.   Admissibility of Evidence in the Record.**

A significant concern of the Court respecting the parties' preparation for the anticipated evidentiary hearing is the admissibility of existing evidence in the record. In the March 30, 2004 Order granting a limited evidentiary hearing, the Court referred to numerous declarations and documentary evidence originally submitted by Holt with his state habeas petition. Section 2246 of Title 28 provides for the admissibility of declarations submitted by Holt, but also provides the Warden an opportunity to test that witness testimony by propounding written interrogatories or obtaining answering affidavits. The Court does not rule out other means of cross examination. Section 2247 of Title 28 additionally provides for the admissibility of documentary evidence introduced in any previous or similar post-conviction application on behalf of the same petitioner. The Court construes these provisions as grounds for admitting all declarations and documentary evidence originally submitted by Holt

with his state habeas petition, subject to evidentiary testing by the Warden and appropriate evidentiary objections.

As noted, the Warden has interposed numerous specific and general objections to over 170 exhibits Holt originally presented with his state habeas petition. Moreover, although almost 50 exhibits are apparently not objectionable on specific grounds, the Warden still maintains his general objections of foundation, hearsay, competence, prejudice, and with respect to documents, authenticity.

In considering the Warden's numerous and meticulous objections, the Court wonders whether he disputes the existence foundational facts. For instance, with respect to juror Billy Ross, does the Warden dispute that the rental home in which Mr. Ross's tenant Mary Callahan lived was cited for building and safety violations? Does the Warden dispute that Mr. Ross's son Wyatt was arrested for physically assaulting Ms. Callahan? With respect to Holt's background, the Court similarly wonders if the Warden disputes that Holt was born not breathing, suffered severe abuse as a child, was institutionalized beginning as a youngster, and thereafter intermittently through his teens, and suffered depressed intellectual functioning. Finally, with respect to Holt's challenge to the rape conviction and rape-murder special circumstance, the Court wonders whether the Warden disputes that post-conviction expert testimony previously submitted by Holt is competent (whether or not he agrees with it and intends to controvert it).

The specific legal bases for some of the Warden's objections also are puzzling. For instance, there are 99 references to Federal Rule of Evidence 104, 107 references to Federal Rule of Evidence 403, and 83 references to Federal Rule of Evidence 405. Rule 104 provides that

a judge presiding over a jury trial will rule on the admissibility of testimonial or documentary evidence before it is presented to the jury. Subdivision (a) Rule 104 conditions admitting evidence for juror consideration on the existence of non-existence of various attributes, including privilege, witness competence, hearsay, the voluntariness of a confession, and the availability of the a witness or an original document. Subdivision (b) of Rule 104 conditions the determination that certain evidence presented for jury consideration is relevant on the existence of a preliminary fact, including authentication of documents, first-hand knowledge, and witness competence. Once a preliminary showing of minimal relevance is established, authentication of documents and witness competence become matters of weight for the jury to determine. Rule 403 also has a gatekeeping function for excluding otherwise relevant evidence from a jury where the probative value of the disputed evidence is outweighed by "unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Finally, Rule 405 provides that when evidence is admissible as to one party or as to one purpose, but not as to another party or purpose, the Court, on request, shall give a special instruction to the jury restricting the evidence to the proper scope. There is no jury fact-finding in a federal capital habeas action. Accordingly, by definition Federal Rules of Evidence 104, 403, and 405 are not applicable in the context of this case, and all such objections must be overruled.

Testing and controverting previously submitted evidence is an entirely different matter. To test this previously considered evidence, as specified in § 2246, the Warden is directed to make

arrangements to contact whatever percipient witnesses, including relatives, family friends, social service personnel, and any mental health care professionals familiar with Holt's background he deems appropriate. Holt's counsel are expected to assist the Warden in making necessary contacts. If informal efforts are unsuccessful, the Warden is directed to move the Court for appropriate discovery orders. The progress of contacting Holt's witnesses will be relayed in the next joint case management statement to be filed within 120 days of the filing of this Order, as noted below.

The Warden has expressed concern about the discoverability of files generated by Holt's trial counsel and that he has not been permitted to pose interrogatories to Holt's various witnesses. The Warden is at liberty to request whatever discovery he feels he needs to make his case. The Warden's discovery motions shall be filed within 60 days from the filing of this order.

**C.   Additional Evidence to Be Offered by the Warden.**

The Warden's response clarifies his position regarding the presentation of additional evidence relevant to the alleged misconduct of juror Billy Ross and the challenge to Holt's rape conviction together with the rape-murder special circumstance. His position is subject to modification.

**1.   Alleged Misconduct of Juror Billy Ross.**

The Warden has offered two purposes for including the wife and son of juror Billy Ross on his proposed witness list. First he maintains these family members can provide rebuttal testimony to evidence of the assault involving tenant Mary Callahan. Second he maintains the wife and son can provide testimony probative of racial animus harbored or not harbored by Mr. Ross.

1    The issue to be resolved at the evidentiary hearing, however,
2 does not involve the precise circumstances of the assault on Mary
3 Callahan. Nor does it involve the impression family members may have
4 on Mr. Ross's racial views. Under the March 30, 2004 Order, the only
5 issue to be resolved regarding juror Billy Ross is whether he was
6 intentionally deceptive in failing to timely reveal accurate
7 information about the Callahan incident as well as the existence of
8 his short-term memory loss, and if so, why. Even if the Warden
9 disputes the rendition of the facts involving the Callahan incident
10 supplied by Holt, that dispute is not relevant to the present inquiry.
11 The Court does not need the testimony of Ramona Ross or Wyatt Ross to
12 explain the circumstances of Ms. Callahan's tenancy or the assault on
13 her by Wyatt Ross. The fact that there was an acrimonious
14 relationship and an assault on her, during the jury selection process
15 for Holt's case, is well-documented. The Warden does not dispute that
16 Wyatt Ross was arrested in connection with the assault. The fact that
17 there was a three week delay from the assault incident and Mr. Ross's
18 disclosure of that fact to Holt's trial judge, after Mr. Ross was
19 selected to sit in Holt's judgment, also is not disputed. Nor has the
20 Warden controverted the fact that when Mr. Ross finally did disclose
21 the fact of his son's arrest to Holt's trial judge, he related an
22 inaccurate and misleading account of the events. Examination of the
23 juror misconduct issue requires testimony from Mr. Ross himself,
24 particularly as it relates to the Callahan incident. However, if the
25 Warden has an offer of proof for the testimony of Mr. Ross's wife and
26 son on the issue of his memory impairment, the Court will consider
27 that offer.
28

### 2. Challenge to Holt's Rape Conviction and the Rape-Murder Special Circumstance.

The matter that has concerned the Court regarding the Warden's stated intention to elicit testimony of an expert on sexual assault victims is the presentation of cumulative or, conversely, non-probative evidence. The issue to be resolved relates solely to whether a rape actually and physically occurred. Based on the Warden's general description of expected testimony from his proposed sexual assault victim expert, the Court will have to await further information, including the qualifications of the proposed expert and the nature of the expert's testimony in an offer of proof. That information should be included in the next joint case management statement to be filed 120 days from the filing of this Order.

**IV. Order.**

Within 60 days from the filing of this Order, that is by May 2, 2006, the parties shall file their respective discovery motions. In addition to identifying the subject matter of the discovery sought, the motions should briefly recount efforts to conduct discovery informally. In the interim the parties should continue to strive to engage in informal discovery. The parties shall file a joint case management statement in 120 days from the filing of this Order, that is on or before July 3, 2006, in which they will identify the factual issues they do not dispute, exhibits from the state habeas petition they agree can be admitted into evidence, and witnesses from whom they wish to elicit evidence on the limited issues. Offers of proof will be required. The joint case management statement should also inform the Court of the progress in conducting discovery.

A CMC will be conducted telephonically on July 20, 2006 at 9:00 a.m. to discuss the contents of the joint case management conference. The Court will initiate the conference five minutes before the hearing is to commence. In the interim, the Court will rule on any discovery motions filed. The parties should make every effort to complete discovery within 30 days from the Court's order granting discovery (where the Court grants discovery). The Court intends to set a date for the evidentiary hearing at the July 20, 2006 CMC. In addition, the Court will establish discovery and motion cut-off dates at the CMC, if it is determined further discovery and motions are necessary.

IT IS SO ORDERED.

Date:   March 3, 2006

                                                  /s/ Anthony W. Ishii
                                                      Anthony W. Ishii
                                          United States District Judge