UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEE HOLT,<br><br>    Petitioner,<br><br>  v.<br><br>RON DAVIS, Warden of San Quentin State Prison,<br><br>    Respondent. | Case No.  1:97-cv-06210-DAD<br><br><u>DEATH PENALTY CASE</u><br><br>ORDER GRANTING CROSS-MOTIONS TO ADMIT REPORTS OF DECEASED AND UNAVAILABLE EXPERTS |

**BACKGROUND**

Presently before the court are:  (1) the September 22, 2017 motion *in limine* filed by petitioner, through his counsel, attorney Robert Myers and Assistant Federal Defender Jennifer Mann, to admit as substantive evidence the Rule 26 reports of deceased defense experts Drs. William Pierce and Samuel Benson (Doc. No. 292);[1] and (2) the November 29, 2017 oral motion by respondent, through his counsel, Deputy Attorney Generals Sean McCoy and Peter Thompson, to admit as substantive evidence the Rule 26 report of unavailable expert Dr. James Missett (EHRT 266).

Both motions pending before the court relate to the limited evidentiary hearing conducted before the undersigned on October 24, 26 and November 1, 2017.  The hearing

---

[1] Reference to "Rule" is to the Federal Rules of Evidence unless otherwise noted; "EH" refers to evidentiary hearing; "EHRT" refers to the reporter's transcript at the evidentiary hearing; "EH Ex." refers to an exhibit at the evidentiary hearing.

1

addressed the following claims in petitioner's writ of habeas corpus filed December 1, 1998 pursuant to 28 U.S.C. § 2254: claim 11 (trial incompetency), claim 12 (ineffective assistance of counsel by failing to raise petitioner's incompetency to stand trial), claim 13 (ineffective assistance of counsel by failing to raise mental state defenses at the guilt phase of the trial), claim 14 (ineffective assistance of counsel by calling petitioner to testify at the guilt phase of his trial), claim 15 (ineffective assistance of counsel by failing to request lesser included jury instructions on rape), and claim 16 (ineffective assistance of counsel by failing to investigate and defend against rape).

Respondent filed opposition to petitioner's motion and petitioner replied to the opposition. Petitioner objected to respondent's motion and the parties argued their respective positions at the November 29, 2017 hearing.

Both sides waived Rule 703 objection to documents relied upon by the other's expert at the hearing. That is, petitioner waived any Rule 703 objection to respondent's exhibits A-S relied upon by Dr. Marvin Firestone during his testimony, with substantive admissibility reserved for later ruling (EHRT 267-72); and respondent waived any Rule 703 objection to petitioner's exhibits EH Ex. 3-43, 44-74 (sealed) relied upon by Dr. Pablo Stewart during his testimony, with substantive admissibility reserved for later ruling (*id.*; *see also* EHRT 126-27).

The court took the motions under submission with the parties being directed to meet and confer thereon and advise the court by not later than December 1, 2017 if they were able to resolve the issues presented by their respective motions. (EHRT 11, 271-72.) On November 28, 2017, the parties advised the court that they were unable to agree on the admission of the reports in question. (Doc. Nos. 302, 307.)

On June 29, 2018, petitioner filed his proposed findings of fact and conclusions of law (Doc. No. 318) and post-hearing brief (Doc. No. 319). Also, on June 29, 2018, respondent filed his post-hearing brief. (Doc. No. 320.) On September 21, 2018, the parties filed their respective reply briefs. (Doc. Nos. 323, 324.)

/////

/////

The court having considered the parties' filings, the record, and the parties' argument at the limited evidentiary hearing finds good cause to admit into evidence the reports of Drs. Pierce, Benson, and Missett.

## DISCUSSION

### A.  Legal Standards

The residual exception to the hearsay rule provides that:

> a) **In General**.  Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> > (1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> >
> > (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.
>
> (b) **Notice.**  The statement is admissible only if the proponent gives an adverse party reasonable notice of the intent to offer the statement--including its substance and the declarant's name--so that the party has a fair opportunity to meet it. The notice must be provided in writing before the trial or hearing--or in any form during the trial or hearing if the court, for good cause, excuses a lack of earlier notice.

Rule 807; *see also* Rule 703 (otherwise inadmissible facts and data underlying expert opinion may be disclosed to the jury only if the probative value outweighs the prejudicial effect).

Admissible in a federal habeas corpus proceeding are:

> [D]ocumentary evidence, transcripts of proceedings upon arraignment, plea and sentence and a transcript of the oral testimony introduced on any previous similar application by or in behalf of the same petitioner[.]

28 U.S.C. § 2247.  In addition, in those proceedings:

> [E]vidence may be taken orally or by deposition, or, in the discretion of the judge, by affidavit. If affidavits are admitted any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits.

28 U.S.C. § 2246.

3

**B.      Petitioner's Motion to Admit Reports of Drs. Pierce and Benson**

Petitioner seeks to admit: (i) the 2008 report and 2015 supplement of psychologist Dr. William Pierce (EH Ex.'s 4, 5),[2] and (ii) the 2008 report of psychiatrist Dr. Samuel Benson (EH Ex. 6).[3] Dr. Pierce was the defense clinical psychologist witness and Dr. Benson was the defense clinical and forensic psychiatrist witness at petitioner's trial.

These experts, who died prior to the hearing before this court, testified during the penalty phase of petitioner's trial and served as defense experts during petitioner's state habeas proceedings. They each examined petitioner and interacted with trial counsel. Although Drs. Pierce and Benson did not opine on petitioner's competency at the time of trial, each reviewed certain of the materials proffered by petitioner's counsel in these federal habeas proceedings and concluded in their respective 2008 reports both that petitioner lacked the capacity to form *mens rea* at the time of the capital crime and that he was incompetent to stand trial.

Petitioner argues the reports of Drs. Pierce and Benson are admissible documentary hearsay (28 U.S.C. §§ 2246, 2247), and/or admissible under the residual hearsay exception given their reliability and probative nature. He argues the reports contain information not reflected in the trial testimony of these experts and otherwise unavailable to petitioner. He argues the Ninth Circuit has allowed subsequent testimony by experts regarding their prior opinions. (*See* Doc. No. 299 at 4, citing *Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir. 2001)) (retrospective competency hearing including supplemental testimony of experts who testified at trial found to be permissible).

Respondent argues that the reports petitioner seeks to admit are untrustworthy because they cannot be tested on cross-examination since their authors are deceased (Doc. No. 296 at 4; *see also* EHRT 5), and that the reports are not signed under penalty of perjury (*id.*). Respondent argues the reports have little probative value because they were prepared 18 years after petitioner's trial, cover the same ground as the trial testimony given by these experts, do

---

[2] Filed as Doc. Nos. 280-4 and 280-5, respectively.

[3] Filed as Doc. No. 280-6.

not show a methodology that is reliable under the decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993) (scientific testimony or evidence must be relevant and reliable), and were considered by defense habeas expert Dr. Stewart who testified at the evidentiary hearing about these same matters. (Doc. No. 296 at 2-4.) The best evidence, according to respondent, is the testimony these experts actually gave at petitioner's trial. (*Id.*; *see also* EHRT 5.)

For the reasons explained below, the court concludes that the reports of Drs. Pierce and Benson, to the extent they contain hearsay, are admissible in these federal habeas proceedings as substantive evidence under the residual exception to the hearsay rule.

### 1. Sufficient Guarantees of Trustworthiness

The statement must be supported by sufficient guarantees of trustworthiness upon considering the totality of the circumstances under which it was made and evidence, if any, corroborating the statement. "Although the factors supporting and undermining trustworthiness are extremely varied and occur in numerous combinations, certain recurring factors are particularly significant [including in pertinent part] motivation to speak truthfully […;] the time lapse between event and statement; whether the statement was under oath; whether the declarant was subject to cross-examination at the time the statement was made; the relationship between the declarant and the person to whom the statement was made; whether the declarant has recanted or reaffirmed the statement or the consistency of multiple statements; […;] and whether the declarant's firsthand knowledge is clearly demonstrated." The residual hearsay exception, 2 McCormick On Evid. § 324 (8th ed.).

First, the court finds that the reports in question carry with them sufficient guarantees of trustworthiness in light of the facts and circumstances of this case. *See United States v. Mokol*, 939 F.2d 436, 439 (7th Cir. 1991) ("[The] determination of the trustworthiness of testimony of an unavailable witness must be analyzed on the facts of each case."). The reports were prepared by recognized experts for use in court. On their face, the reports reflect that they were prepared and provided to petitioner's habeas counsel by these experts pursuant to retainer agreements, circumstances suggestive of their trustworthiness. *See* Fed. R. Evid. 901. Dr.

Pierce testified to and established his expert credentials at petitioner's trial (RT 3194-97), as did Dr. Benson (RT 3104-07).

Additionally, the reports in question were signed by their authors and reflect observations and opinions made at the time of petitioner's trial and state habeas proceedings related thereto, as well as the basis and reasons for such opinions that relate to matters at issue in this federal habeas proceeding. To the extent the reports are not sworn to under penalty of perjury, Rule 26 does not require expert reports be signed under penalty of perjury.

### 2. More Probative than Other Evidence

The proffered statement must be more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. "While some courts interpret this as a general necessity requirement, it does not mean that the hearsay evidence must be essential." 2 McCormick On Evid. at § 324.

Here, the reports include evidence with respect to material facts probative of petitioner's then mental state and competency to stand trial. Such matters are within the contemplation of Rule 26(a)(2) (relating to disclosure of expert testimony) and to a significant extent were not addressed in the testimony these experts provided at the penalty phase of petitioner's trial. *See Huff v. White Motor Corp.,* 609 F.2d 286, 294-95 (7th Cir. 1979) ("To be admissible under the residual exception, the statement must be more probative on the point for which it is offered than any other evidence . . . (the defendant) can procure through reasonable efforts.").

Moreover, the reports of Drs. Pierce and Benson were unique in that these experts considered evidence proffered in habeas proceedings in the context of their personal evaluation, examination, and interaction with petitioner, trial counsel, trial consultants, and each other. Both Drs. Pierce and Benson interviewed petitioner. Dr. Pierce interviewed petitioner four times over approximately 15 hours (RT 3202, 3224), while Dr. Benson interviewed him four times for approximately 90 minutes each time. (RT 3152-53.) Notably, petitioner was not examined by either Dr. Stewart or Dr. Firestone, the experts who testified at the evidentiary hearing in this federal habeas proceeding.

6

The reports are probative of petitioner's mental state and competency at the time of his trial, in ways the penalty phase trial testimony given by Drs. Pierce and Benson simply was not. *See Larez v. Los Angeles*, 946 F.2d 630, 644 (9th Cir. 1991) (to be within the residual exception to the hearsay rule, the proffered evidence essentially must be the "best available evidence" on the point for which it is offered); *cf. Draper v. Rosario*, 836 F.3d 1072, 1082 (9th Cir. 2016) (statements found not to be within residual exception to hearsay rule where the statements were not significantly more probative than the testimony already presented).

For example, Dr. Pierce opined in his report that petitioner's capability to quickly and fully understand the proceedings and to comprehend decisions made regarding his defense was seriously compromised; counsel would have had to explain repeatedly the proceedings and decisions to be assured that petitioner had even a simple and concrete understanding of the events of his trial; due to petitioner's mental disorder, he was unable to assist counsel in the conduct of his defense in a reasonable, rational manner; and petitioner should not have been allowed to testify at the guilt phase of his trial. (Doc. No. 280-4 at 4.) Dr. Pierce also opined in his report that "[petitioner's] seizure disorder affected his capability to form the required mental states for the crimes of which he was convicted. An altered state of consciousness brought on by a seizure would impair [petitioner's] ability to premeditate, deliberate or harbor malice aforethought to commit first degree murder, robbery, rape, sodomy, and burglary." (*Id.* at 6.)

Similarly, Dr. Benson opined in his report that "[petitioner] was incompetent to stand trial." (Doc. No. 280-6 at 8.) Dr. Benson found this conclusion consistent with his trial diagnosis that petitioner suffered from "an organic mental disorder, organic personality syndrome, partial complex seizures and other brain damage." (*Id.*) Dr. Benson further opined on habeas that petitioner could not competently testify in his defense. (*Id.* at 11). He further stated his opinion that "[petitioner's] organic mental disorder, organic personality syndrome, partial complex seizures and other brain damage impacted his ability to form the *mens rea* for the crimes for which he was convicted." (*Id.*)

/////

Additionally, the court finds that the methodology employed by Drs. Pierce and Benson in their respective reports was sufficient under the standards set by the Supreme Court in *Daubert*. The Ninth Circuit, upon remand in that case stated that a court must determine "the experts' testimony reflects scientific knowledge . . . [that] their findings are derived by the scientific method, and … [that] their work product amounts to good science … [and that] the proposed expert testimony is relevant to the task at hand[.]" *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1315 (9th Cir. 1995). Petitioner observes that consistent with these principles announced in *Daubert*:

> Both doctors interviewed people who had observed Mr. Holt in his childhood and adolescence. Dr. Pierce interviewed social service providers (Dan Fremont, Marvin Kapushion, Saundra Johnson, Sandra Lane, Beverley Wright and Kenneth Tomlinson), a friend (Rudy Heisler), and Mr. Holt's brother (Alex Holt). (RT 3201.) Dr. Benson interviewed [institutional care providers] Beverley Wright, Saundra Johnson, Sandra Lane, and Kenneth Tomlinson as well as Micheline Brault. (RT 3154.)
>
> Both doctors reviewed Mr. Holt's: social service records, police reports, juvenile court records, probation records, medical records and school records. (RT 3201-02 [Pierce]; RT 3112-19 [Benson].)
>
> Both doctors interviewed petitioner multiple times and utilized the Diagnostic and Statistical Manual (DSM) method of multi-axial diagnosis to arrive at their opinions regarding Mr. Holt. (RT 3217-23 [Pierce]; RT 3108-11 [Benson].)
>
> Dr. Pierce conducted psychological tests. (RT 3217-20.) Dr. Benson described the methods he used to rule out malingering. (RT 3172-77.)
>
> In stating their opinions in 2008, both doctors listed the data and information they considered in forming their opinions. (Doc. 280-4 at 1, 7-14 [Pierce]; Doc. 280-6 at 1, 13-20 [Benson]; *see also* Doc. No. 299 at 7.) These materials relate to and are the same kinds of records that the doctors relied upon in forming their opinions at trial: social service records, police reports, medical records and family member declarations.

(Doc. No. 299 at 6-7, citing *United States v. Finley*, 301 F.3d 1000, 1006-09 (9th Cir. 2002)) (proper psychological methodology supporting expert opinion includes consideration of patient history, observation of the patient, and administration of standard psychological testing).

/////

Respondent has not persuaded the court that the demands of *Daubert* are unsatisfied here as to the reports in question. Drs. Pierce and Benson examined petitioner at the time of his trial and reviewed and considered certain of the sources of information included with the habeas proffer in this federal proceeding including evidence of petitioner's psychosocial history, demeanor and interaction, and psychological and neuropsychological testing. Their reports are an outgrowth of their pre-trial research and examinations and were authored pursuant to professional standards. *See Daubert*, 43 F.3d at 1318. "Even though the evidence may be somewhat cumulative, it may be important in evaluating other evidence and arriving at the truth so that the 'more probative' requirement cannot be interpreted with cast iron rigidity." 4 J. Weinstein & M. Berger, Weinstein's Evidence 803 (24)[01, at 803-379 (1985).

### 3. Furtherance of Evidentiary Rules and Interests of Justice

The Federal Rules of Evidence are to be construed "so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." Fed. R. Evid. 102.

Here, the reports contain relevant, reliable and highly probative evidence not otherwise available, consideration of which will contribute to a fair proceeding. *F.T.C. v. Figgie Intern., Inc.*, 994 F.2d 595, 608 (9th Cir. 1993) (admitting unsworn letters of complaint under the residual exception in part because reasonable efforts would not produce any more probative evidence). The residual exception is meant to facilitate "the admission of needed, relevant, reliable evidence which does not conform to a class exception." 4 Weinstein & Berger, Evidence, ¶ 803(24)[01] (1984) at 803–381. Respondent has not identified other more probative evidence regarding such matters that is reasonably available to petitioner. *See Huff*, 609 F.2d at 295 ("The hearsay statement is to be admitted only if doing so will best serve the general purposes of the Federal Rules of Evidence and the interests of justice.").

Although Drs. Pierce and Benson were unavailable to testify in these proceedings due to their passing, their examination notes, tests, methodology and results, conclusions and opinions are referenced in their reports and were considered by the parties' respective experts

1  in connection with their evidentiary hearing testimony in these proceedings.  Dr. Stewart
2  testified at the hearing that he relied upon Dr. Pierce's report  (EHRT 113, citing EH Ex. 4 at
3  3) and inferentially that he also relied upon Dr. Benson's report (EHRT 113-118, citing EH Ex.
4  6 at 7).  Respondent's expert, Dr. Firestone, testified at the hearing that he considered the trial
5  testimony of both Drs. Pierce and Benson and their examination notes, and he was examined as
6  to such matters at the hearing.  (*See* EHRT 186, 224-26, 235, 243, 247, 256, 259; EH Ex. O at
7  Attachment A); *see also Daubert*, 43 F.3d at 1316–19.

8        In sum, consideration of all the relevant factors compels the conclusion that the reports
9  of Drs. Pierce and Benson are admissible in these federal habeas proceedings as substantive
10 evidence.  *See Figgie Intern., Inc*., 994 F.2d at 609 (unsworn statements contained in letters of
11 complaint found to be admissible under the residual exception to the hearsay rule because
12 testimony from letter-writers was not likely to be any more reliable than the letters
13 themselves); *Televisa, S.A. de C.V. v. Univision Communications, Inc*., 635 F. Supp. 2d 1106,
14 1109 (C.D. Cal. 2009) (expert report of witness who was rendered unavailable due to a conflict
15 which developed after it was authored, ruled admissible under the residual hearsay exception);
16 *see also U.S. v. American Tel. and Tel. Co.*, 516 F.Supp. 1237, 1240 (D.D.C. 1981) (citing
17 *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977)) (purpose of the residual exception
18 to hearsay rule is to provide courts with "the flexibility to deal with new evidentiary situations
19 which may not be pigeon-holed elsewhere.").

20       **C.**    **Respondent's Motion to Admit the Report of Dr. Missett**

21       Respondent, in turn, seeks to admit as substantive evidence the February 29, 2008 Rule
22 26 report of respondent's prior habeas expert psychiatrist Dr. James Missett, M.D., Ph.D., who
23 is now unavailable. (EHRT 266-72.)   Petitioner objects to the admission of that report into
24 evidence.

25       Dr. Missett was retained by respondent in 2006 to serve as an expert at the evidentiary
26 hearing and continued in that capacity until he withdrew in 2014 due to cognitive and memory
27 problems.  (*See* Doc. No. 320 at 10-11.)  The record reflects Dr. Missett was the subject of an
28 adverse 2013 report filed with the Medical Board of California on such grounds and that he

surrendered his medical license in 2015 due to his deteriorating mental state. (*See* Doc. No. 320 at 10, n.1; *see also* EHRT 271-72; EH Ex. 151; EH Ex. 2 at 73.)

The record reflects also that Dr. Missett's report (*see* EH Ex. 151 [marked but not admitted]) was provided in discovery to petitioner's counsel in 2008. Respondent initially did not intend to offer Dr. Missett's report into evidence but rather sought to do so only after petitioner's expert, Dr. Stewart, mentioned Dr. Missett's June 14, 2007 expert declaration in his own Rule 26 report.[4] (*See* EH Ex. P at 73; *id.*, App. 1; EHRT 266-67.) At the evidentiary hearing in this action, petitioner's counsel cross-examined respondent's expert, Dr. Firestone, about his review and use of both Dr. Missett's report and his August 2, 2006 expert declaration. (EHRT 245-52; *see also* EH Ex. O, Att. A at 2; Doc. No. 139-1.)

The court finds the report of Dr. Missett is not procedurally barred and that to the extent it contains hearsay, it too is admissible as substantive evidence under the residual exception to the hearsay rule.

**1.   Procedural Bar**

Petitioner argues that respondent is precluded from admitting Dr. Missett's report as substantive evidence because that report was not included in respondent's list of exhibits for the evidentiary hearing in this action. (*See* Doc. Nos. 265, 279; Fed. R. Civ. P. 16, 26(a)(3), 37(c); *see also* Doc. No. 323 at 99, citing *Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1067 (Fed. Cir. 1987)) ("It is well settled that documents not marked and identified before trial may be excluded.").

The court finds any such error to be harmless. As noted, Dr. Missett's findings and opinions were available to counsel for both petitioner and respondent well in advance and were considered by their experts who testified at the evidentiary hearing. In this regard, Dr. Firestone reviewed Dr. Missett's report (EHRT 245-51; *see also* EH Ex. O, Attach. A at 2),

/////

---

[4] The parties stipulated that Dr. Stewart's report (Doc. No. 266) would serve as his testimony on direct examination in these proceedings and, accordingly, that the record in this action is expanded to include Dr. Stewart's report. (Doc. No. 284 at 2; Doc. No. 295 at 9.)

11

while Dr. Stewart reviewed Dr. Missett's habeas declarations that preceded his report (EH Ex. P at 75, 85-86, 93).

Moreover, it was petitioner's counsel who placed Dr. Missett's report at issue at the evidentiary hearing in this action. Dr. Stewart, in his evidentiary hearing testimony, sought to impeach Dr. Missett's opinions relating to the mental examination of petitioner, particularly as it related to malingering. (*See e.g.* EHRT 86.) Petitioner's counsel also sought to impeach Dr. Firestone based upon his review and use of Dr. Missett's report and explored whether Dr. Firestone had essentially merely copied portions of Dr. Missett's report. (EHRT 245-52; *see also* EH Ex. O, Att. A at 2; Doc. No. 139-1.) Dr. Firestone acknowledged on cross-examination that both he and Dr. Missett had considered the same issues and used some of the same verbiage in their reports. (EHRT 245-52.)

### 2. Sufficient Guarantees of Trustworthiness

Petitioner argues on multiple grounds that Dr. Missett's report does not meet the trustworthiness requirement of Rule 807. For instance, he argues Dr. Missett may have suffered the onset of his mental health problems as early as 2008, thereby affecting the trustworthiness of his report. (*See* Doc. No. 323 at 99-100.) Petitioner's counsel also argues that Dr. Missett failed to disclose to respondent at the time of entering a 2014 retainer agreement for this proceeding, from which he subsequently withdrew, that there was a pre-existing California Medical Board complaint against him that had led to his loss of licensure. (*Id.*) Petitioner's counsel also contends that Dr. Missett did not sign his report personally as required by Rule 26 of the Federal Rules of Civil Procedure, but had someone else sign his 2008 report for him, thereby calling its trustworthiness into question. (*Id.*)

Nonetheless, the court finds sufficient guarantees of trustworthiness in Dr. Missett's report based on the facts and circumstances of this case. Dr. Missett, a recognized expert in his field, prepared his report following review of the same trial records reviewed by Drs. Pierce and Benson, for use in court regarding material facts of trial competency and mental state defenses.

/////

Starting with petitioner's final argument, the failure of Dr. Missett to personally sign his report under penalty of perjury is not alone a basis to find the report untrustworthy for purposes of Rule 807.  *See* Fed. R. Evid. 901 (providing an expressly non-exhaustive list of authenticating evidence).  If it were, the reports of Drs. Pierce and Benson would also have to be found untrustworthy since they were unsworn. (EH Ex.'s 4-6.)   Moreover, Dr. Missett's expert credentials were reflected in his report. (EH Ex. 151 at 1 and Curriculum Vitae attachment thereto; *see also* Doc. No. 139-1 [August 2, 2006 Declaration of Dr. Missett] at ¶¶ 1-2.)

Petitioner's suggestion that Dr. Missett's report might also be untrustworthy for purposes of Rule 807 because Dr. Missett may have suffered the onset of his mental health issues at the time he prepared his 2008 report (Doc. No. 323 at 99-100) is pure supposition. Petitioner has not demonstrated on the developed record that the "cognitive problems and difficulties with his memory which impaired [Dr. Missett's] ability to testify and practice medicine" and resulted in the surrender of his medical license in 2015 (Doc. No. 320 at 10), were manifested in his 2008 report and the opinion expressed therein.

Furthermore, the court is unpersuaded that petitioner was denied reasonable notice of Dr. Missett's report and opportunity to counter it.  *See* Fed. R. Evid. 807(b).  Petitioner's counsel possessed Dr. Missett's report as early as 2008.  In 2015, petitioner learned that Dr. Missett was withdrawing from this case and that respondent would not be calling him as a witness or offering his 2008 report into evidence in these proceedings.  Nonetheless, as noted, it was petitioner who raised Dr. Missett's report at the evidentiary hearing in this proceeding. Moreover, petitioner's counsel had the opportunity to counter the Missett report by cross-examining Dr. Firestone.  *See Piva v. Xerox Corp*., 654 F.2d 591, 596  (9th Cir. 1981) (purpose of the notice requirement under the catchall exception is to give adverse parties an opportunity to attack the trustworthiness of the evidence).  Even if respondent's counsel failed to provide reasonable notice of their intent to offer Dr. Missett's report into evidence, that failure was excusable, and petitioner was not prejudiced thereby.   *See Piva,* 654 F.2d at 596 (citing *U.S. v. Leslie*, 542 F.2d 285, 291 (5th Cir. 1976)) (a failure to satisfy the notice requirement is

13

harmless where the adverse party nonetheless had fair opportunity to meet the challenged statements).

### 3. More Probative than Other Evidence

Petitioner's counsel also argues that Dr. Missett's report lacks probative value, pointing out that Dr. Missett, like Dr. Firestone, was unable to examine petitioner. Petitioner's counsel also contends that Dr. Missett failed to follow his own standards for conducting a comprehensive psychiatric evaluation because he was unable to interview petitioner and failed to review all the available life and mental health history documents with respect to petitioner. (*See e.g.* Doc. No. 323 at 100-02, citing Dr. Missett's August 2, 2006 habeas declaration, Doc. No. 139-1 ¶ 10.)

However, it has been established that Dr. Missett reviewed and considered the findings, opinions, and testimony of Drs. Pierce and Benson that were contemporaneous with petitioner's trial. (EH Ex. 151; *see also* EHRT 247.) None of these three experts was able to examine petitioner at the time their respective Rule 26 reports were prepared. Each expert reviewed significant psychosocial history documents and information regarding petitioner. (EH Ex.'s 4-6, 151.) Moreover, the failure of these experts to expressly analyze any particular document reviewed is not evidence that such document was not considered. Notably each expert listed the documents reviewed in his respective report.

Although Dr. Missett was unavailable to testify in this federal habeas proceeding, his conclusions and opinions were considered by the experts of both parties who did testify at that hearing. For instance, Dr. Missett's conclusions and opinions provide the context and basis for certain of the opinions offered by Dr. Firestone, including his opinion as to petitioner's competency and mental state. Thus, Dr. Missett's findings and opinions are probative of those highly relevant issues in ways Dr. Firestone's report alone is not. Particularly, Dr. Missett's treatment of the issue of whether petitioner was malingering is both probative and appears central to the related opinions and conclusions of Drs. Stewart and Firestone. Both of these testifying experts referred to Dr. Missett and his report in their hearing testimony before the undersigned. Finally, as noted Dr. Stewart used Dr. Missett's report to impeach opinions

14

which Dr. Firestone testified he considered and concurred in as providing a basis for his own opinions.

### 4. Furtherance of Evidentiary Rules and Interests of Justice

In short, Dr. Missett's report contains relevant, reliable and highly probative evidence not otherwise reasonably available, consideration of which will contribute to a fair proceeding before this court. *Figgie Intern., Inc*., 994 F.2d at 608. Petitioner has not identified other more probative evidence that is available to respondent on the matters noted above.

Dr. Missett's report is also probative to the extent Dr. Firestone in his testimony at the evidentiary hearing in this case joined in certain of Dr. Missett's opinions relating to petitioner's mental state. (EHRT 246.) Dr. Firestone, like Dr. Missett, relied upon the evaluations of petitioner that Drs. Pierce and Benson conducted around the time of petitioner's trial. Dr. Firestone also conceded during his testimony before this court that he had used some of the "same verbiage" as Dr. Missett (EHRT 245) in his report, and their reports were similarly formatted (EHRT 245-52).[5] Moreover, petitioner was permitted to fully cross-examine Dr. Firestone in this regard. (EHRT 248-49.)

For all these reasons, the court concludes that Dr. Missett's report is also admissible as substantive evidence. *See Figgie Intern., Inc*., 994 F.2d at 608-09; *Televisa, S.A. de C.V.*, 635 F. Supp. 2d at 1109.

### CONCLUSION

The reports of Dr. Pierce (Doc. Nos. 280-4 & 280-5), Dr. Benson (Doc. No. 280-6), and Dr. Missett (EH Ex. No. 151) are admissible as substantive evidence under the residual exception to the hearsay rule. Each of their reports is highly probative of material facts relating to the competency of petitioner to stand trial and to petitioner's *mens rea* defenses and is supported by sufficient guarantees of trustworthiness upon consideration of the totality of facts

---

[5] The parties stipulated that Dr. Firestone's reports (Doc. Nos. 237-1, 272) would serve as his testimony on direct examination in these proceedings except that the footnote on page 7 of his report (Doc. No. 237-1) would not constitute part of his testimony on direct examination; and that the record in this case is expanded to include Dr. Firestone's reports. (Doc. No. 284 at 2; *see also* Doc. No. 295 at 10.)

and circumstances.  Fed. R. Evid. 703, 807; 28 U.S.C. §§ 2246-2247; *see also United States v. Valdez-Soto*, 31 F.3d 1467, 1471 (9th Cir. 1994) ("[Catchall exception] exists to provide courts with flexibility in admitting statements traditionally regarded as hearsay but not falling within any of the conventional exceptions.").

Moreover, both parties received reasonable notice of the existence of the reports or, in the alternative, the notice requirement was excused under the circumstances in this case.

Finally. both petitioner and respondent have had a fair opportunity to test the evidence through adversarial proceedings at the evidentiary hearing.

Accordingly, petitioner's *in limine* motion to admit as substantive evidence the Rule 26 reports of deceased experts Drs. William Pierce and Samuel Benson (Doc. No. 292) is GRANTED; and respondent's oral motion to admit as substantive evidence the Rule 26 report of unavailable prior habeas expert Dr. James Missett (EHRT 266) is also GRANTED.

IT IS SO ORDERED.

Dated: **May 29, 2020**　　　　　　　　　　　 _____
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE